UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.05–10143–PBS |
| | ) | |
| COURTNEY WHITE | ) | |
| | ) | |

**DEFENDANT WHITE'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SUPPRESS EVIDENCE SEIZED AND STATEMENTS MADE**

Defendant, Courtney White, respectfully moves that this Honorable Court suppress from evidence a gun (.32 cal. Davis 2 shot Derringer), ammunition, and any other items allegedly observed or seized during a warrantless search and seizure of the defendant and the passenger area of a car (1992 Toyota) registered to the defendant, from which he was illegally removed on January 4, 2005 as well as any statements allegedly made by him that resulted from the unlawful searches or seizures. As grounds for this motion, the defendant states that the evidence was obtained in violation of his rights under the Fourth Amendment to the United States Constitution.

**FACTS**

According to a Boston Police Report and ATF Agent Lisa Rudnicki's Federal Grand Jury testimony, at approximately 9:05 p.m. on January 4, 2005, Boston Police officers Frank

1

Griffiths and Dan MacDonald were "on an operation" with two probation officers from the Boston Municipal Court, at which time they observed a 1992 Grey Toyota being operated on Camden Street and subsequently on North Hampton Street without a left headlight. The officers conducted a "routine motor vehicle stop of this vehicle" by confronting the car "head on".

As the officers approached the car they recognized the operator as Courtney White who the officers knew with respect to prior arrests and felony convictions. "For officer safety" he was "removed" from the vehicle and frisked[1].

At this time Courtney white engaged officers in conversation and stated "put me in the back seat of your car so my girlfriend doesn't see me" and walked away from the Toyota toward the unmarked cruiser. Officer Griffiths observed a full knit ski mask in the back seat. As Officer Griffiths retrieved the ski mask from the back seat a .32 caliber Davis Industries 2 shot Derringer fell out of the ski mask.

---

[1] Officer Griffiths' police report makes no mention that a silver-folding knife was discovered during the pat frisk. The only reference to it is in the third to last sentence of the report where it states "a silver folding knife to be sent to evidence management."

**I.   THE JANUARY 4, 2005 STOP AND FRISK WAS UNCONSTITUTIONAL AS THE POLICE LACKED REASONABLE SUSPICION TO JUSTIFY THE PAT FRISK OF THE DEFENDANT BASED ON THE TRAFFIC (EQUIPMENT) VIOLATION.**

A citizen does not surrender all of the protections of the Fourth Amendment by entering an automobile. New York v. Class, 475 U.S. 106, 112 (1986), citing Delaware v. Prouse, 440 U.S. 648, 658, 99 S.Ct. 1391 (1979); Alemeida-Sanchez v. United States, 413 U.S. 266, 269, 93 S.Ct. 2535 (1973).  In United States v. Romain, 393 F.3d 63 (1st Cir. 2004), the court states:

> A temporary detention of an individual constitutes a seizure within the purview of the Fourth Amendment and, therefore, is subject to the constitutional *71 imperative that it must be reasonable under all the circumstances. See Terry v. Ohio, 392 U.S. 1, 16, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Lee, 317 F.3d at 31. The Terry Court established the baseline rule, holding that an officer may conduct a brief investigatory stop if he has a reasonable, articulable suspicion that criminal activity is afoot. See Terry, 392 U.S. at 30, 88 S.Ct. 1868. Although the showing required to meet this standard is considerably less demanding than that required to make out probable cause, the officer nonetheless must possess (and be able to articulate) more than a hunch, an intuition, or a desultory inkling of possible criminal activity. See id. at 27, 88 S.Ct. 1868.

And then,

> The propriety of an officer's actions after an initial stop depends on what the officer knows (or has reason to believe) and how events unfold. *See* Chhien, 266 F.3d at 6. The touchstone is reasonableness. Thus, in determining whether a pat-down search is an appropriate step following a valid *Terry* stop, the key is whether, under the circumstances, "the officer is justified in believing that the person is armed and dangerous to the officer or others." United States v. Schiavo, 29 F.3d 6, 8 (1st Cir.1994).

"It is insufficient that the stop itself is valid; there must be a separate analysis of whether the standard for pat-frisks has been met. To asses the legality of a protective frisk, a court looks at the totality of the circumstances to see whether the officer had a particularize, objective basis for his or her suspicion." United Sates v. McKoy, 428 F.3d 38, 39 (2005); citing United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744 (2000). In the instant case, without knowing that they knew the defendant, the officers conducted the "routine traffic stop" by confronting the defendant's car head on. They recognized the defendant as someone who had a felony record and who they believed was a "known gang member." The defendant suggests that membership in a gang or a group, by itself, is not sufficient to justify a stop. (See Commonwealth v. Heon, 44 Mass.App.Ct. 254, 257 (1998),

4

"[An] officer is not entitled to conduct a Terry search merely because a defendant belongs to a group which is not outlawed" Id. at 256.

The government will rely on two additional factors as rationales for the officers' concern for their safety: (1) the high incidence of crime in the area and (2) the fact that the defendant was acting in an engaging manner and said, "put me in the back seat of your car, I don't want my girlfriend to see me."  In United States v. McKoy, 428 F.3d 38 (1st Cir. 2005), the First Circuit in dealing with two similar factors, specifically, (1) the dangerousness of the neighborhood and (2) McKoy's nervous appearance and movements inside the car, held that, "Even taken together, these factors are insufficient to justify the frisk."

> While police are permitted to take the character of a neighborhood into account when assessing whether a stop is appropriate, see United States v. Stanley, 915 F.2d 54, 56 (1st Cir.1990), it is only one factor that must be looked at alongside all the other circumstances when assessing the reasonableness of the officers' fear for their safety. Moreover, "[t]his is not a case where the police had reason to suspect the presence of firearms based on the type of crime suspected." United States v. Lott, 870 F.2d 778, 785 (1st Cir.1989). The only reason for the stop was a parking and license plate violation, from which no assumption about weapons may fairly be drawn. McKoy was the sole occupant of

5

>   the vehicle and the officers made their
>   approach during daylight hours. The
>   previous criminal incidents in the
>   neighborhood thus lend only weak
>   support to the officers' perception
>   that McKoy was armed and dangerous.
>   McKoy, at 40.

In the instant case the only reason for the stop was the equipment violation (broken headlight).  Additionally, there was nothing sinister as to the defendant's wish that his girlfriend and child not see him surrounded by police.

As the court held in McKoy, which is applicable in the instant case,

>   The government's proposed standard
>   comes too close to allowing an
>   automatic frisk of anyone who commits a
>   traffic violation in a high-crime area.
>   Although we cannot blind ourselves to
>   the need for law enforcement officers
>   to protect themselves and other
>   prospective victims of violence in
>   situations where they may lack probable
>   cause for an arrest, a protective frisk
>   for weapons requires a reasonable
>   inference that the person being
>   searched is armed and dangerous. It is
>   simply not reasonable to infer that a
>   driver is armed and dangerous because
>   the officers believe that he appears
>   nervous and reaches toward the car's
>   console when approached by police, even
>   in a high-crime neighborhood.  McKoy,
>   40-41 (internal quotations
>   omitted)(emphasis added).

The Court concluded, "[w]e fully recognize the risk of harm faced by police officers at any traffic stop. However, as the district court stated in its thoughtful opinion, 'To

6

admit the evidence would be a legal determination that if one commits a traffic violation in a high-crime neighborhood he will be subject to a frisk whenever he appears nervous and moves.' Terry does not require that determination, and the Fourth Amendment prevents it." McKoy at 41.

In a May 12, 2006 decision United States v. Aitoro, No. 04-1742, the First Circuit upheld the District Court's denial of a motion to suppress citing "a high crime area", the defendant's apparent reaching for a gun, and statements of the defendant.  The Court stated, "Our conclusion as to the initial stop is dictated by the Supreme Court's decision in Illinois v. Wardlow, 528 U.S. 119 (2000). Wardlow turned primarily on two factors: the defendant's presence in an area known for heavy narcotics trafficking and the defendant's "headlong flight" the moment he noticed the police.  Wardlow 528 U.S. at 124; see also United States v. Scott, 270 F3d 30, 41 (1st Cir. 2001)."  The instant case is clearly distinguishable in that at no time was the defendant apparently reaching for any weapons whatsoever and there was no attempt to flee.  Even assuming, without conceding, that the exit order was lawful, the defendant possessed a valid license and registration.  The pat frisk did not establish probable

7

cause to believe a crime had been committed, which leads to the next issue, that even if the exit order and pat frisk of the defendant was permissible, the ensuing entry into and search of the automobile was not.

### II. THE POLICE DID NOT HAVE PROBABLE CAUSE TO MAKE A WARRANTLESS ENTRY INTO THE DEFENDANT'S CAR, SEARCH THE CAR, AND SEIZE ITEMS.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Terry v. Ohio, 392 US 1, 9 (1968). The reasonableness of a search and seizure is determined by balancing the need to search or seize against the invasion which the search or seizure entails. Terry at 21. The Supreme Court has described this balancing test as "weighing the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." Texas v. Brown, 443 U.S. 47, 50-51 (1979). Ordinarily, for the search and seizure of a person or vehicle to be reasonable, the police must have probable cause to arrest.

> Probable cause exists when "`the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.' " United States

8

> v. Figueroa, 818 F.2d 1020, 1023 (1st Cir.1987) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1983)).
> This court, as well as the district court, must consider the totality of circumstances to evaluate the government's demonstration of sufficient " '[p]robability ··· of criminal activity.' " Illinois v. Gates, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983) quoted in United States v. Jorge, 865 F.2d 6, 9 (1st Cir.), cert. denied, 490 U.S. 1027, 109 S.Ct. 1762, 104 L.Ed.2d 198 (1989);
> United States v. Maguire, 918 F.2d 254, C.A.1 (Mass.),1990.

The law requires probable cause to believe that items sought are related to criminal activity under investigation and that the items may be reasonably expected to be located in the place to be searched.

In the instant case, there was no probable cause to arrest the defendant Courtney White or to believe that he had committed a crime until the illegal search and seizure of the two shot derringer which was not incident to a lawful arrest, lawful inventory search, or in plain view. Additionally, there is no contention by the government that the defendant consented to the search and seizures.

### III. THE STATEMENTS MADE BY THE DEFENDANT ARE FRUITS OF UNLAWFUL POLICE CONDUCT.

Any alleged statements of the defendant are fruits of the unlawful stop, the unlawful pat frisk of Mr. White, and

9

unlawful search of the car therefore they should be suppressed.

          Respectfully Submitted,
          COURTNEY WHITE
          By his Attorney

          /s/James E. McCall
          Four Longfellow Place
          Suite 3703
          Boston, MA 02114
          (617)720-2900
          BBO# 327365