```
               UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
```

_____ )
UNITED STATES OF AMERICA            )
                                    )
        v.                          ) CRIMINAL ACTION NO. 05-10143-PBS
                                    )
COURTNEY WHITE,                     )
                                    )
        Defendant.                  )
_____)

**MEMORANDUM AND ORDER**

August 9, 2006

Saris, U.S.D.J.

Defendant Courtney White, charged with possession of a firearm and ammunition by a felon in violation of 18 U.S.C. § 922(g)(1), has moved to suppress a gun, ammunition, and any other items observed or obtained during a warrantless search of his vehicle. At the evidentiary hearing, Boston Police Officers Dan MacDonald and Frank Griffiths testified. For the following reasons, Defendant's motion is **DENIED**.

## I.  FINDINGS OF FACT

At 9:05 p.m. on January 4, 2005, Officers Griffiths and MacDonald were patrolling Columbus Avenue in Boston, Massachusetts, in plain clothes and in an unmarked cruiser after concluding their duties with Operation Stopwatch. In the car with them were two probation officers, Timothy Norris and John Turner. They made a left turn on Northampton Street, located in a high-crime area noted for numerous car thefts and noticed a

Toyota operating with a broken left headlight.  Officer MacDonald activated his flashing blue lights and stopped the Toyota.  The patrol car was head-to-head with the Toyota.

After the stop, Probation Officer Norris and Officers Griffiths and MacDonald recognized the driver of the Toyota as Defendant Courtney White.  Significantly, they knew White was a leader of a local gang known as the "Massachusetts Avenue Hornets," a group involved in drug trafficking and violence.  Officer MacDonald had performed several Field Interrogation Observations ("FIO's") on White and knew he had been involved in a stabbing.  When White began to get out of his vehicle on his own, Officer Griffiths feared that White might have a weapon and yelled, "Hands."

Once White was out of the car, Officer Griffiths pat-frisked him and found a knife.  Officer Griffiths searched the front of the vehicle and saw a black ski mask in the rear passenger side seat, within reach of the driver.  More talkative and friendly than usual, White began ambling away from his car toward the unmarked cruiser and stated, "Let's talk in the back of the cruiser.  I don't want my girlfriend to see me."  The officers believed White was trying to lure the police from his car.  At this time, Officer MacDonald was in the cruiser checking White's license and registration.  Officer Griffiths interrupted his search of the vehicle to speak with White who was at that time

standing between the two vehicles.  The place where the cars were stopped was located within sight of White's residence.

Once the situation was under control, Officer Griffiths went back into the Toyota, picked up the ski mask, and found a gun. Angrily, White accused Officer Griffiths, whom he called "Franko," of planting the gun.  Officer Griffiths retorted, "You know better than that."  White was then handcuffed, Mirandized, transported to booking, and Mirandized again.  At the police station, White apologized to Officer Griffiths for the suggestion that Officer Griffiths planted the gun.

## II. CONCLUSIONS OF LAW

Under the two-part inquiry to determine whether a search complies with Terry v. Ohio, 392 U.S. 1 (1968), courts evaluate "whether the officers' initial interference with the defendant was justified; second, we ask whether the ensuing search was 'reasonably related in scope to the circumstances which justified the officers' initial interference.'"  United States v. Ivery, 427 F.3d 69, 72 (1st Cir. 2005) (citations omitted).

> A search is "reasonable" under the second part of [the Terry] test where a law enforcement officer "conduct[s] a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted."  Vehicle searches are also permissible where officers "possess[] a reasonable belief based on 'specific and articulable facts which . . . reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of . . . weapons" in the vehicle.

Id. (citations omitted).  In addition, "the second part of the *Terry* test imposes a dual requirement for a permissible warrantless search for weapons: (1) the officers must have actually harbored a suspicion that the suspect was armed; and (2) that suspicion must have been reasonable under the circumstances."  Id. (citation omitted).  If justified, among the areas that the police can search are those which a person detained might reach in order to grab a weapon.  See Long, 463 U.S. at 1049-50 (recognizing that combination of circumstances justifiably created officer's reasonable belief that suspect posed danger if allowed to return to his vehicle).

Defendant does not dispute that the police had a reasonable basis for the initial stop for a traffic violation.  The police pulled White's car over because its left headlight was broken.  See Whren v. United States, 517 U.S. 806, 810 (1996) ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); Mass. Gen. Laws ch. 90, § 7 (requiring two lighted headlamps at night).

The issue is thus whether the search was permissible under the circumstances.  In this case, the stop occurred in a high-crime area, and the officers immediately recognized White as a leader of a local gang and were aware of a prior stabbing incident in which he was involved.  The officers had a reasonable

4

belief, based on their experience with White, his gang, and the location of the stop, that White may be armed and pose a possible danger.  Thus, the pat frisk was justified under the totality of the circumstances.

   The crux of the defendant's challenge is that the subsequent search of the back seat of the vehicle was unconstitutional because the police officers no longer had a well-founded concern for their safety once the pat-frisk and search of the front seat had been completed.  Because of White's conduct, as well as his past history and the discovery of the knife on his person, the police reasonably conducted a limited additional search of White's vehicle.  White was unusually garrulous and persistent in suggesting that any discussion take place in the patrol car.  This behavior reasonably led them to believe that White was attempting to lure them away from his automobile for a reason and that the ski mask might be hiding a weapon.  See Ivery, 427 F.3d at 73-74 (affirming validity of vehicle search under Terry based in part on defendant's nervous behavior); United States v. Stanley, 915 F.2d 54, 56 (1st Cir. 1990) (concluding that defendant's nervous movements and apparent attempt to conceal something supported reasonable suspicion).  In the totality of the circumstances, I find it was reasonable to resume the search of the ski mask on the rear passenger seat.

## **ORDER**

Defendant Courtney White's motion to suppress is **DENIED**.

                                        **S/PATTI B. SARIS**
                                        United States District Judge